JAMES E. O'HARA v. W. H. POWELL and others, county canvassers.

*Practice—Mandamus—Contested Election.*

1. In a proceeding to compel by *mandamus* a re-assembling of a board of county canvassers and a recount of the votes cast in the county for candidates for the house of representatives, where, since the institution

of the action, the board of state canvassers has acted upon the returns transmitted to them, and issued a commission to the person elected on the face of the returns; *Held*, that judicial action in the premises would be wholly unavailing, as the matter has passed beyond the jurisdiction of the court, and the proceeding must be dismissed.

2. In such case no judicial order can change or affect the result; the only remedy open to the plaintiff is by a contest before the house of representatives.

3. If the exercise of the judicial power invoked could have been rendered and made available to secure the transmission of full and corrected returns to the board of state canvassers in time to be acted upon before its final adjournment, the plaintiff's right to the aid of the court would seem to be clear and indisputable; but on account of the delays incident to judicial proceedings, the remedy by *mandamus* is practically useless.

(*Moore* v. *Jones*, 76 N. C., 182; *Brown* v. *Turner*, 70 N. C., 93, cited and commented on.)

APPLICATION for a *Mandamus* heard at Chambers in Rocky Mount, in Edgecombe county, on the 9th of December, 1878, before *Seymour, J.*

The facts necessary to an understanding of the decision of this court are stated in its opinion. The order for *mandamus* was granted and the defendants appealed.

*Messrs. George Howard* and *Gilliam & Gatling* for plaintiff.

*Messrs. Battle & Mordecai, D. G. Fowle* and *Busbee & Busbee,* for defendants.

SMITH, C. J. At the election held in the several counties constituting the second congressional district on the 5th day of November last, the plaintiff, who was a candidate for representative therefrom in the next congress of the United States, received a large number of votes in the county of Edgecombe. Returns from the various places of voting were made to the board of county canvassers, at their meeting on the second day after the election, at which time and place they are required by law "to open and canvass the

returns and make abstracts stating the number of votes cast in each precinct for each office, the name of each person voted for, and the number of votes given to each person for each different office, and sign the same." Acts 1876–'77, ch. 275, § 25.

Section 26 directs the abstract for representatives in congress to be made on a separate and distinct sheet. Three such abstracts for representatives in congress and state officers must be prepared and signed by the board of county canvassers, of which one is delivered to the sheriff, another filed in the register's office for registration, and the third forwarded in a registered letter to the secretary of state, at Rale gh. § 27.

When the canvass is concluded the original returns are deposited with the clerk of the superior court for safe keeping, and the abstracts recorded in a book kept in the office for the purpose. He is then required to transmit duplicates of the abstracts, mentioned in section 27, to the secretary of state.

The canvassing board must proclaim the result of their canvass and comparison of the polls, when completed, at the court house door. Section 53 establishes a board of state canvassers, consisting of the governor, secretary of state, attorney general and two members of the state senate of different political parties to be appointed by the governor. This board shall open the abstracts in the office of the secretary of state " on the Thursday following the third Monday after the day of election and examine the returns if they shall have been received from all the counties; and if all are not received, they may adjourn not exceeding twenty days for the·purpose of obtaining the returns from all the counties, and when these are received, *shall proceed with the canvass;* such canvass shall be conducted publicly in the hall of the house of representatives, § 55.

Sections 56, 57, 58 and 59 prescribe in detail the duties of

this board which are very similar to those imposed upon the county board as to county officers, and the abstracts prepared by them must ascertain and state what persons are elected to the respective offices.

The next section (60) is in these words: "Representatives in congress, justices of the supreme court, judges of the superior court and solicitors shall be commissioned by the governor." Such are the general provisions of the act regulating elections and defining the duties of canvassing boards, constituting the machinery by which the popular will is ascertained and made effective in the choice of public agents and representatives.

The county canvassers of Edgecombe, as the pleadings in the case show, rejected many of the precinct returns of votes made to them, for alleged irregularities and canvassed and counted the other precinct returns, only the abstracts of which were disposed of as the law directs, and by adjournment after completing their work dissolved their organization. To compel the persons composing the board of county canvassers of Edgecombe to reassemble and make a new and full recount, including the omitted votes and the required abstract therefrom, is the object of the present proceeding by mandamus, which on the hearing before the judge on the 9th day of December last, he ordered to issue against the defendants, and from whose judgment they appeal.

The state canvassing board under the law can extend their session for twenty days when necessary to procure absent county returns, and it would expire by limitation on the 17th day of the month, allowing the relator eight days only to derive any advantage from the award of the writ. It must be assumed that the state canvassers have acted upon the abstracts transmitted from the several counties to the department of state, including those from Edgecombe charged in the complaint to be partial and imperfect, and declared the

result; and that the commissions mentioned in section 60 have been issued to those who upon the count are ascertained to have been elected. It is not suggested that this board did not in every respect act legally in canvassing the returns and determining the election upon the evidence before them, or that the governor, himself a member of the body, ought not to have issued, as we must presume he did issue in obedience to the law, commissions to the persons having upon the count the highest number of votes. The case has, therefore, proceeded so far that no judicial order in this action can change or affect the result.

If returns corrected under the mandate addressed to the defendants and substituted for those now in the clerk's and register's offices are sent to the secretary of state, they would remain inert and lifeless papers in his office and of no benefit to the relator. If, however, he should be disposed further to prosecute his suit and seek another writ to compel the members of the state board to reconvene and recanvass (and no wrong or official neglect is imputed to them) it could only end, if the majorities are thereby reversed, in making two inconsistent determinations, and perhaps a third mandamus become necessary to compel the issuing of a second commission for the same office. The result would be that two persons would possess the same evidence of his title to an office which one only can fill, and the controversy between rival claimants be left unsettled as before. The law provides in the process of *quo warranto*, a simple and direct mode of trying the title to office and recovering possession when it is wrongfully withheld, in which the merits may be investigated and the remedy is full and complete. For this the writ of mandamus is a very insufficient substitute.

Let us suppose the contest to be about one of the offices of the state into which the person declared elected by the canvassers is inducted through the regular forms of law, can his title be impeached and he superseded or affected by

a proceeding which exhausts itself in the correction of errors in the returns from a single county? And this, too, when the constitution provides a tribunal for the trial of the contested election? Art. III., § 3.

In the election of a member of the general assembly, or a representative in congress, contesting claims to a seat must be tried before the body to which the certificate of election or commission accredits the person holding it, and the decision there made is final and irreversible. If Kitchin, to whom we must assume the commission has been given in accordance with the count and determination of the board, should take his seat as a member of the house of representatives, can he be disturbed or the relator assisted in his efforts to displace him by any action which the court is competent to take? The power to do this resides exclusively in the house, and in our opinion not less so after the case has passed beyond further control of the state and its officers by the issuing of the commission.

We concede the propriety and usefulness of the judicial power, the exercise of which in this case is invoked for the relator, to enforce upon a returning board of canvassers the proper performance of their official duties, while the political machinery is in motion and the result undetermined. If the service demanded could have been rendered and made available, by the transmission of full and corrected returns to the state board in time to be acted on before the final adjournment, the relator's right to the aid of the court would seem to be clear and indisputable; and yet with the delays incident to the mode of judicial procedure, the trial of issues and the right of appeal, the remedy by mandamus is practically useless. The complaining party is not however without redress. He may assert his right to an office and recover its possession by the appropriate writ of *quo warranto* or by a contest before the representative body or other special tribunal appointed by law.

The enquiry naturally meets the relator at this stage of his proceeding,—what benefit will he derive from the successful prosecution of his suit? How will it assist him in the assertion of his claim before the house, in which full and exclusive jurisdiction is vested?

In the controversy about the mayoralty of the city of Raleigh, the incumbent's term expired before the cause could be heard, and as no practical advantage would be secured by the determination of the conflicting claims to the office, this court refused to take further cognizance of the cause.

We do not find it necessary to consider and decide the question of the nature of the functions of the canvassing board who are directed to " open and canvass the returns" as distinguished from those of the board of county commissioners who, under the former law are merely " to add the number of votes returned," and who in *Moore* v. *Jones,* 76 N. C., 182, are declared to be a mere ministerial agency. Nor do we propose to enquire whether the board of county canvassers having once attempted to perform the service imposed on them, and adjourned, can be compelled to meet again and revise and correct their errors and omissions, upon which there are numerous and conflicting decisions to be found. We put our decision upon the ground that judicial action would be wholly unavailing, as the matter has passed beyond the jurisdiction of the court.

The writ of mandamus, originally a prerogative writ, now as declared by BYNUM J., in *Brown* v. *Turner,* 70 N. C., 93, "an ordinary process in cases to which it is applicable" can be used only when there is no other remedy and this remedy may be made effective. We are content to quote a few extracts from that valuable work, Tapping on Mandamus, to show under what circumstances it will be granted:

"It will not be granted if, when granted, it would be nugatory," page 15.

"The court will refuse it, if it be manifest that it must be vain or fruitless or cannot have a beneficial effect."

" The court will refuse it, if it see that it must ultimately fail."

" Nor will the court grant it, if sought merely in order to *obtain the opinion of the court* on *a point of law*," page 16.

" The court will refuse to grant the writ of mandamus, if it appear that the applicant has a remedy by information in the nature of a *quo warranto*," page 26.

"A rule for a mandamus to admit a recorder was refused, because it appeared that there was a recorder *de facto*, and therefore the applicant had such a remedy. For the consequence of granting a rule in such a case would be that a second person would be admitted to an office already filled by another, both claiming to be duly elected." *Ibid.*

In the discussion before us, the relator's counsel not disputing the uselessness of the proceeding as a practical remedy, insisted nevertheless that this court should pass upon the legal right of the returning board to reject any of the precinct returns, and define their duties and powers as a guide in future elections, and a declaration of the law upon matters that may become the subject of investigation by the body of which the relator claims to be a duly elected and rightful member. This we do not propose to do for any such purpose. Courts are established to decide causes properly constituted before them, and when their decisions can be enforced and made effectual. They will not indulge in the expression of speculative opinions not called for in the decision of the cause depending before them for use in some contemplated future proceeding.

We were struck with the forcible and just remarks of the court in *The People* v. *Tremain*, 29 Barb., 96, upon this point : " We do not sit," says EMOTT, J., " to decide abstract questions, or to promulgate our opinions in authoritative form for some future, it may be indirect, use or reference.

Our duty is to administer the remedies which the law and the constitution afford to suitors, according to the rules which the law and the constitution prescribe."

The action must be dismissed, but without costs.

PER CURIAM. Dismissed.