## STATE EX REL. KUSTERMANN VS. BOARD OF STATE CANVASSERS.

*February 6—February 21, 1911.*

*Elections: Representative in Congress: State canvass: When* manda-mus *lies: Duty of canvassers: Presumptions: Powers of supreme court: When exercised.*

[1. Whether, after the board of state canvassers has determined the result of an election, issued its certificate of election, and adjourned *sine die*, it can, by *mandamus* or otherwise, be compelled to reconvene and issue a certificate to another person, not determined.]

2. A board of county canvassers, in making return of the result of an election for representative in Congress, certified that a certain candidate had received 1,450 votes in the county, and appended a tabular exhibit (certifying that it was correct as compiled from the original returns made to the county clerk) in which the votes for said candidate in one precinct were entered as 16, but just to the right of such figures were the figures 22, followed by a brace and the words, "Shown on tally sheet. Inspectors' statement shows 16." Below the footing of the column, which was 1,444, the figure 6 was set down and added thereto, and the result, 1,450, was given thereunder. *Held*, that the board of state canvassers properly credited said candidate with 1,450 votes from that county, it being obvious on the face of the return that the county canvassers determined that the figures in question should be 22 and not 16.

3. It cannot be said by the court in such case that the county canvassers improperly made up the tabular exhibit; but, in the absence of evidence to the contrary, it must be presumed that they performed their duty and determined the correct vote in the manner provided by law.

4. The memorandum on the tabular statement, referring to the tally sheet, if evidence of anything, is not evidence that the board of county canvassers followed the tally sheet.

5. It is the duty of the board of state canvassers to canvass from the regular returns before them, and they cannot go behind the returns.

6. Whatever may be the power of the supreme court under sec. 3452, Stats. (1898),—which authorizes it in certain cases, upon *mandamus* against any board of canvassers, to inquire into the facts of the election, irrespective of the election returns, "if it is

State ex rel. Kustermann v. Board of State Canvassers, 145 Wis. 294.

deemed necessary to promote the ends of justice,"—such power will not be exercised in a case involving the election of a representative in Congress where a certificate of election has already been issued to one of the candidates and the inquiry could not be completed before his term of office would have begun, when, in any event, the ultimate decision of the right to the seat must rest with the House of Representatives itself.

THIS is an application for *mandamus* requiring the board of state canvassers to reconvene, determine and certify that *Gustav Kustermann,* petitioner, was elected as representative in Congress from the Ninth Congressional district of Wisconsin, and requiring the secretary of state to issue and transmit certificates of such election.

It appears from the petition that the petitioner, *Kustermann,* was the Republican candidate for Congress in the Ninth Congressional district at the general election held November 8, 1910; that Thomas F. Konop was the Democratic candidate, Alexander McEathron the Prohibition, and Thomas J. Oliver the Social Democratic candidates in said district; that said district is composed of the counties of Brown, Kewaunee, Door, Oconto, Marinette, and Outagamie; that the board of county canvassers canvassed the returns of said election in the respective counties made by the inspectors of the election of the several precincts and such returns were certified to the secretary of state. The petition alleges that the votes received by each of said candidates at such election were as follows:

|  | Kustermann. | Konop. | McEathron. | Oliver. |
|---|---|---|---|---|
| Brown county.................... | 2,797 | 3,274 | 128 | 679 |
| Kewaunee county... ...... | 893 | 2,326 | 12 | 22 |
| Door county.................... | 1,303 | 738 | 58 | 91 |
| Oconto county................. | 1,725 | 1,444 | 39 | 174 |
| Marinette county........... | 2,039 | 842 | 169 | 614 |
| Outagamie county.......... | 3,378 | 3,510 | 149 | 197 |
|  | 12,135 | 12,134 | 555 | 1,777 |

State ex rel. Kustermann v. Board of State Canvassers, 145 Wis. 294.

That on November 28, 1910, the board of state canvassers met at the office of the secretary of state in Madison and canvassed the returns of said election; that the petitioner appeared before said state board as well as said Thomas F. Konop, each claiming to have the greatest number of votes cast in said district; that the board adjourned to December 5, 1910, and again 'to December 8, 1910, at which last named date, after the canvass of the returns, the board made a statement that said respective candidates received the following number of votes in said counties:

|  | Kustermann. | Konop. | McEathron. | Oliver. |
|---|---|---|---|---|
| Brown county................. | 2,797 | 3,274 | 128 | 679 |
| Kewaunee county........... | 893 | 2,326 | 12 | 22 |
| Door county.................... | 1,303 | 738 | 58 | 91 |
| Oconto county................. | 1,725 | 1,450 | 39 | 174 |
| Marinette county............ | 2,039 | 842 | 169 | 614 |
| Outagamie county........... | 3,378 | 3,510 | 149 | 197 |
|  | 12,135 | 12,140 | 555 | 1,777 |

That said board of state canvassers in disregard of their duties certified said above statement as true and determined that Thomas F. Konop had been by the greatest number of votes elected, and made a certificate accordingly which was recorded in the office of the secretary of state, and transmitted to said Konop a certificate of election under the lesser seal; that in making said examination, canvass, statement, determination, and certificate the said board of state canvassers went behind the returns lawfully before said board and credited said Konop with six votes more than were cast for him in the first voting precinct in the town of Pensaukee, Oconto county.

The petition charges that, aside from the face of the returns, either through inadvertence, mistake, or fraud, divers omissions were made by the inspectors and clerks of election in counting, recording, certifying, and returning the votes, whereby the vote as counted, certified, and returned for pe-

titioner was smaller than was in fact cast for him, and sets forth ·divers irregularities in that regard, and that by reason of such omissions, errors, and mistakes in counting, canvassing, certifying, and returning said votes, and other errors, omissions, and mistakes on the part of the election officials, the votes received by petitioner had been incorrectly counted, certified, and returned.

An alternative writ of *mandamus* was issued and due return made thereto by the board of state canvassers, composed of *James A. Frear,* secretary of state, *Andrew H. Dahl,* state treasurer, and *Frank L. Gilbert,* attorney general. The return puts in issue the material allegations of the petition and writ and sets up affirmatively that as such board of state canvassers they duly met on November 28, 1910, and adjourned, and on December 8, 1910, duly canvassed the returns and made a statement of the whole number of votes cast for representative in Congress from the Ninth district and stated the whole number of votes to be 26,607, and that of said votes the whole number given to Konop was 12,140, and the whole number given to petitioner was 12,135, and to McEathron 555, and to Oliver 1,777, and distinguished the several counties in which such votes were given as follows:

| Counties. | Total vote. | Thomas F. Konop. | Alexander McEathron. | Gustav Kustermann. | Thomas J. Oliver. |
|---|---|---|---|---|---|
| Brown............. | 6,878 | 3,274 | 128 | 2,797 | 679 |
| Kewaunee........ | 3,253 | 2,326 | 12 | 893 | 22 |
| Door.............. | 2,190 | 738 | 58 | 1,303 | 91 |
| Outagamie........ | 7,234 | 3,510 | 149 | 3,378 | 197 |
| Oconto ........... | 3,388 | 1,450 | 39 | 1,725 | 174 |
| Marinette........ | 3,664 | 842 | 169 | 2,039 | 614 |
| | 26,607 | 12,140 | 555 | 12,135 | 1,777 |

That the respondents as such board duly ·certified such statement to be correct and determined that said Konop had been given the greatest number of votes and duly elected to the office aforesaid, and attached to such statement a certifi-

cate of their determination and delivered the same to the sec-
retary of state as provided by law; that a majority of said
board, namely, *James A. Frear,* secretary of state, and
*A. H. Dahl,* state treasurer, signed said certificate, and *Frank
L. Gilbert,* attorney general, dissented therefrom, and there-
upon said board, having completed their work as provided by
law, adjourned *sine die.* Respondents specifically deny that
Thomas F. Konop received only 1,444 votes in Oconto county,
and allege that said returns from Oconto county were duly
canvassed by respondents, and that the whole number of votes
given for representative in Congress for the Ninth Congres-
sional district from Oconto county was 3,388, of which num-
ber Thomas F. Konop received 1,450, Alexander McEath-
ron 39, Gustav Kustermann 1,725, and Thomas J. Oliver
174, as shown by the certified statement of the canvass made
by the board of county canvassers of Oconto county, and from
which certified statement respondents made their canvass and
determination for said office as to Oconto county; that *James
A. Frear* as secretary of state duly recorded in his office such
certified statement and forthwith made and transmitted to
Thomas F. Konop a certificate of his election under the lesser
seal, and caused a copy of such certified statement to be pub-
lished in a newspaper printed at the seat of government, and
that said secretary of state also prepared a like certificate at-
tested by him and addressed the same to the House of Repre-
sentatives as required by law; that said Thomas F. Konop in
truth and in fact received 12,140 votes, and that said num-
ber is shown by the returns from which said canvass was
made, and that the petitioner received only 12,135 votes as
shown by the returns. Respondents deny that in making the
examination, canvass, statement, determination, and certifi-
cate they went behind the returns lawfully before them as
such board and considered evidence *aliunde* and credited said
Konop with six votes more than were cast for him in the first
voting precinct in the town of Pensaukee, Oconto county; and

allege that at the time of making the canvass and determination the relator and also Thomas F. Konop appeared in person and by counsel; that relator and said Konop filed with the board by their respective attorneys, at the time of making said canvass, divers affidavits and statements, among which was a certified statement of the tally sheet and tabulated statement of the votes cast at said election for member of Congress in the first voting precinct of the town of Pensaukee, Oconto county, also affidavits of inspectors of the election of said precinct; that such statement and affidavits were permitted to be filed at the request of the parties with the understanding that the same would not be considered by the board and the same were not considered by the board in any manner whatever in making their determination and canvass, and that respondents considered nothing except the legal returns made from the different counties comprising said district. Respondents allege generally due performance of their duty and that they adjourned *sine die* on the 8th day of December, 1910, and that said Thomas F. Konop, to whom said certificate had been issued, is now in possession of the office to which he was so declared elected, and that his name now appears on the roll of the House of Representatives as member elect from the Ninth Congressional district of Wisconsin, of the Sixty-second Congress of the United States of America; that the respondent *Frank L. Gilbert* was of opinion upon the face of the returns that the certificate should issue to the relator, and that he has stood ready and willing to certify that the relator received the greatest number of votes and was duly elected representative in Congress.

The following were attached to and made a part of the return: A certified copy of certificate of the board of state canvassers, certified copy of the statement of the board of county canvassers, certificate of election, certified copy of inspectors' statement showing result of election held for first precinct, town of Pensaukee, Oconto county, certified copy of tally list

from first precinct of town of Pensaukee, Oconto county, and certified copy of affidavits of inspectors of election for first precinct of town of Pensaukee, Oconto county.

The petitioner demurred to the return of the board of state canvassers upon the ground that it appears upon the face thereof that the same does not state facts sufficient to constitute a defense and does not show any cause or excuse for not obeying said writ.

For the petitioner there was a brief by *Fairchild & Goldman* and *Greene, Fairchild, North & Parker,* attorneys, and *H. R. Goldman* and *Jerome R. North,* of counsel, and oral argument by *J. R. North* and *H. R. Goldman.* They contended, *inter alia,* that on the face of the returns it was the duty of the board of state canvassers to determine that the relator received a plurality of all the votes cast and that he was entitled to the certificate. The tally sheets cannot be considered. Only such papers as the statute requires may be regarded as election returns. *State ex rel. McDill v. Board of State Canvassers,* 36 Wis. 498, 507; McCrary, Elections (2d ed.) § 104, p. 119; 15 Cyc. 376, note 44; *Smith v. Lawrence,* 2 S. Dak. 185, 49 N. W. 7; *State ex rel. Steadley v. Stuckey,* 78 Mo. App. 533; *State ex rel. Ford v. Trigg,* 72 Mo. 365; *State ex rel. Sunderall v. McKenzie,* 10 N. Dak. 132, 86 N. W. 231; *People ex rel. Att'y Gen. v. Tool,* 35 Colo. 225, 86 Pac. 231. On the other hand, it has been held that where the tally sheets are made a part of the return by the statutes they can be considered by the canvassers, and where there is a discrepancy between them and the statements of the election officials the former prevail. *State ex rel. Welty v. McFadden,* 46 Neb. 668, 65 N. W. 800; *Hughes v. Parker,* 63 Kan. 297, 65 Pac. 265; *In re Stewart,* 155 N. Y. 545, 50 N. E. 51. The duties of canvassing boards are purely ministerial; they must canvass only from the legal returns before them and cannot consider evidence *aliunde.* *Att'y Gen. ex rel. Carpenter v. Ely,* 4 Wis. 420, 427. To

consider the tally sheets in this case would be to go behind the legal returns, and this the county canvassing board could not do.  Sec. 94e, Stats. (1898); 15 Cyc. 381, 382, 385, and cases cited; 10 Am. & Eng. Ency. of Law (2d ed.) 746, 747; Merrill, Mandamus, §§ 178, 181; *Att'y Gen. ex rel. Bashford v. Barstow,* 4 Wis. 567; *State ex rel. McDill v. Board of State Canvassers,* 36 Wis. 498, 507; *State ex rel. Hadfield v. Grace,* 83 Wis. 295, 298, 299; *State ex rel. Nelson v. Emerson,* 137 Wis. 292; *People ex rel. Att'y Gen. v. Tisdale,* 1 Doug. (Mich.) 59; *May v. Board of Canvassers,* 94 Mich. 505, 514, 54 N. W. 377, 379; *Belknap v. Board of Canvassers,* 94 Mich. 516, 517, 54 N. W. 376; *People ex rel. Derby v. Rice,* 129 N. Y. 461, 29 N. E. 358; *People ex rel. Sherwood v. State Board of Canvassers,* 129 N. Y. 360, 14 L. R. A. 646; *State v. Governor,* 25 N. J. Law, 331, 348; *State ex rel. Sunderall v. McKenzie,* 10 N. Dak. 132, 138–140, 86 N. W. 231, 234, 235; *State ex rel. Benton v. Elder,* 31 Neb. 169, 183, 184, 10 L. R. A. 796, 801; *People ex rel. Noyes v. Board of Canvassers,* 126 N. Y. 392, 27 N. E. 792.

For the respondents there was a brief by the *Attorney General, Russell Jackson,* deputy attorney general, and *Bowler & Bowler* and *Martin, Martin & Martin,* of counsel, and oral argument by *Mr. Joseph Martin, Mr. Jackson,* and *Mr. E. R. Bowler.*

The following opinion was filed February 21, 1911:

KERWIN, J.  Many interesting questions are raised upon this appeal and exhaustively argued by counsel on both sides. On the part of the relator it is insisted that upon the face of the returns he was entitled to the certificate of election, and that the board of state canvassers, without authority of law and contrary to the returns, gave the certificate of election to Thomas F. Konop, Democratic candidate.  It is therefore claimed that this court should award a peremptory writ of *mandamus* compelling the board to re-assemble and give the

State ex rel. Kustermann v. Board of State Canvassers, 145 Wis. 294.

certificate to relator, and that under sec. 3452, Stats. (1898), this court should inquire into the facts of the election irrespective of the election returns and determine who was in fact entitled to the certificate of election by the greater number of legal votes cast.

On the part of the respondents it is insisted that, the board having performed its duties, issued the certificate of election to Mr. Konop, and adjourned *sine die,* it became *functus officio* and cannot be compelled by *mandamus* or otherwise to reconvene and issue a certificate to relator; and further that the returns show that Mr. Konop was elected and therefore the respondents were right in issuing the certificate to Mr. Konop.

Whether the board after it had performed its duty, issued a certificate, and adjourned *sine die* can be compelled to reconvene and issue a certificate to another is a delicate question and one upon which there is conflict of authority.    It is claimed that *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628, is controlling here, and that upon the doctrine laid down there no relief can be had by *mandamus* to compel the issuance of a certificate in any case after the board has performed its duty and adjourned.    But this court did not go to that extent in the *Rinder Case.*    However, we do not regard it necessary to consider or decide whether *mandamus* will lie in any case, after the board of state canvassers has determined the result, issued the certificate of election, and adjourned *sine die,* to compel the issuance of a certificate to another candidate under existing laws.

A very able argument is made by counsel for relator based upon the proposition asserted by them that upon the face of the returns it was the duty of the board of state canvassers to determine that *Mr. Kustermann* received a plurality of all the votes cast, and that he was entitled to the certificate; therefore the certificate should have been issued to him.    The return of the respondents to the writ is quite fully set forth in

the statement of facts and need not be repeated here.   From
such return it seems clear to us that the respondents were
warranted in issuing the certificate to Mr. Konop, and that
the returns of the county canvassers justified such action.
The trouble seems to have arisen out of the return from
Oconto county.   The board of county canvassers of that
county made and filed with the county clerk their statement
of the result of the election in that county for representative
in Congress, by which they certified that the

"foregoing and within tabular statement is correct and true,
as compiled from the original returns made to the county
clerk of said county, and as compared therewith by us, and
that from such returns it appears that at the general election
held in the several towns, wards, villages, and election dis-
tricts of said county, on the first Tuesday succeeding the first
Monday of November, A. D. 1910, being the eighth day of
said month,

"The whole number of votes given for representative in
Congress for the Ninth Congressional district was thirty-
three hundred eighty-eight (3,388), of which number Thomas
F. Konop received fourteen hundred fifty (1,450) votes;

"Alexander McEathron received thirty-nine (39) votes;

"*Gustave Kustermann* received seventeen hundred twenty-
five (1,725) votes;

"Thomas J. Oliver received one hundred seventy-four
(174) votes."

The certificate is in conformity with statute and in the
usual form, except as to the tabular exhibit respecting the vot-
ing precinct in Oconto county called "Pensaukee 1st precinct."
In the vertical column under the name "Thos. F. Konop" and
opposite "Pensaukee, 1st precinct" are the figures "16," and
just to the right of these are the figures "22," followed by a
brace to the right of which appear the words "Shown on tally
sheet.   Inspectors' statement shows 16."   The addition of the
column immediately under the last precinct vote is given
"1,444."   Under the units in the figures 1,444 is the figure
6, and immediately under an addition showing "1,450," so

that the column as finally added gives Thomas F. Konop 1,450 votes in Oconto county. The controversy is over the six votes—whether the respondents were warranted in counting them for Mr. Konop. In other words, whether the state board should have determined that Konop received 1,450 votes in Oconto county or 1,444. Now if we take the second footing in the Konop column of the tabular exhibit and the certificate of the whole number of votes as heretofore quoted, both the tabular exhibit and the certificate are in harmony, each giving 1,450 votes, while if we take the first footing and the certificate they do not agree. But it is said by counsel for relator that the respondents were not authorized in crediting the six votes to Konop, but were bound by the number in the column of the tabular exhibit opposite each voting precinct. True, the tabular exhibit is a part of the return and is entitled to weight. But the statement of the number of votes in the body of the certified statement is at least as strong evidence as the tabular exhibit. And with the notation on the tabular exhibit and the second footing making the tabular exhibit correspond with the statement in the certificate, there seems to be no doubt that the county canvassers determined, and rightly, that Mr. Konop received 1,450 votes in Oconto county, and that upon the face of the returns the respondents were justified in so finding. It is quite obvious upon the face of the return of the county canvassers that they determined that the figures in the Konop column opposite the words "Pensaukee, 1st precinct," should be 22, not 16, and so made the corrections indicated on the face of the tabular exhibit. Nor can it be said that the county canvassers improperly made up the tabular exhibit, but on the contrary it must be presumed that they performed their duty.

Sec. 82, Stats. (1898), respecting the county canvassers, provides:

"On the assembling of the board they shall open and examine the returns, . . . and if, on examination of any returns

State ex rel. Kustermann v. Board of State Canvassers, 145 Wis. 294.

received, they shall be found so informal or incomplete that the board cannot intelligently canvass them, they shall dispatch a messenger with such returns to the inspectors who made them with a written specification of the informalities or defects, and command them to forthwith complete the same in the manner required by law and deliver them to said messenger, which such inspectors shall do. . . . For such purposes the board may adjourn as may be necessary, not more than four days at one time nor more than eight days in all."

Under this statute the county canvassers are authorized to require the returns from the inspectors, if found informal or incomplete, to be completed in the manner provided by law. The same or similar authority is conferred upon the state canvassers. Sec. 94, Stats. (1898), as amended by ch. 488, Laws of 1909. What proceedings were had before the county canvassers we only know from the returns. It may well be that an incomplete or informal return was furnished by the inspectors and afterwards corrected returns furnished in accordance with the statute and the correction made in the manner indicated after the return of the county canvassers had been prepared and before signing, or the county canvassers may have committed an error in copying in the figure 16 in the column instead of 22, as shown by the inspectors' returns, and on discovering the error made the correction by adding up the column and adding six so as to make the correct footing.

The original returns of the county canvassers are before us, and the figures including the figure 6 and the footings appear to be in the same handwriting and bear evidence that the additions were made by the board so as to give the correct number of votes to Mr. Konop. Another fact corroborative of this proposition is the certified copy of the inspectors' statement from the town clerk's office of the town of Pensaukee, Oconto county, made a part of the return to the writ and showing the result in the first precinct, town of Pensau-

kee, to be 22 votes for Mr. Konop. This statement is required to be filed and preserved with the town clerk by sec. 78, Stats. (1898), as amended by sec. 1, ch. 148, Laws of 1901. But however the irregularities on the tabular exhibit occurred is not very material, because such exhibit was made by the county canvassers, corresponds with the vote in the certificate, and must be presumed to be correct, since nothing appears in the returns to the contrary. The memorandum on the tabular exhibit as to the tally sheet, if evidence of anything, is not evidence that the county board of canvassers followed it. On the contrary it must be presumed that they determined the correct vote in the manner provided by law. Examination of the tally sheet may have aroused inquiry and investigation along the lines provided by law. It is true that the board of state canvassers, the respondents, were obliged to canvass from the regular returns before them under the power conferred by the statutes and could not go behind the returns, and in their return to the writ of *mandamus* they alleged that they did not go behind the returns of the county canvassers, and considered nothing else in arriving at their determination but the regular returns of the county canvassers. A great deal of space is occupied by counsel for relator in their brief with argument to the effect that the county canvassers or respondents could not consider the tally sheet, but there is no evidence that they determined the result of the election from the tally sheet. On the contrary, upon the facts set up in the return and admitted by the demurrer it appears that they did not, so it is unnecessary to determine whether the tally sheet could be considered or not.

Aside from the question that the respondents as a canvassing board has performed its duty, determined that Mr. Konop was elected, issued a certificate of election to him, and adjourned *sine die,* we think the record fully supports the action of the respondents, and that the relator has made no case which would warrant this court in awarding the writ of *man-*

*damus.  State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N.
W. 628; *State ex rel. Jones v. Oates,* 86 Wis. 634, 57 N. W.
296; *La Pointe v. O'Malley,* 46 Wis. 35, 50 N. W. 521; Merrill, Mandamus, § 142.

Sec. 3452, Stats. (1898), is also relied upon by counsel for
relator.  It is alleged in the petition, upon information and
belief, that divers omissions were made by the inspectors
throughout the district in counting and returning votes cast
for relator so that his vote as canvassed and returned was
smaller than he in fact received, and that such alleged errors
which do not appear on the face of the returns may be reviewed in this action under sec. 3452, Stats. (1898).  We
shall not attempt to render an opinion upon the scope of this
section, nor decide whether it applies to any case where the
board of canvassers had issued the certificate of election and
adjourned as in the instant case.  It seems by its terms to
cover cases only where it is deemed necessary to promote the
ends of justice to inquire into the facts of the election, "irrespective of the election returns," and does not appear to reach
the present case.  Even conceding that the statute is valid
and may be applied to the present case we do not think that
it would "promote the ends of justice if we were now to" inquire into the facts of the election irrespective of the returns.
Such an inquiry would take weeks and probably months.  It
appears that Mr. Konop's certificate is already filed and his
name on the list of the next House; long before this court
could reach any result the term of office will have begun; certainly any decree of this court rendered after March 4th next
cannot oust Mr. Konop from office; the final determination of
the right to office rests with the House of Representatives itself, and any inquiry by the court after the term of office has
commenced in a proceeding to which Mr. Konop is not a
party would seem to be futile to the last degree.

On the facts alleged in the return we are unable to say that
the state canvassing board committed error or that it is clear

State ex rel. Kustermann v. Board of State Canvassers, 145 Wis. 294.

that they should have awarded the certificate to *Mr. Kustermann,* hence the demurrer to the return must be overruled. There being no suggestion that any material issue of fact can be taken on the return the writ will be denied.

*By the Court.*—The demurrer is overruled and the writ is denied.

The following opinion was filed February 23, 1911:

Tɪᴍʟɪɴ, J.    I have also arrived at the conclusion that the writ should be denied and desire to make a record of the reasons which led me to that conclusion.

1. A statute of the United States provides:

"Before the first meeting of each Congress the clerk of the next preceding House of Representatives shall make a roll of the Representatives-elect, and place thereon the names of those persons, and of such persons only, whose credentials show that they were regularly elected in accordance with the laws of their states respectively, or the laws of the United States."    2 Fed. Stats. Ann. 215.

The return to the alternative writ shows that a certificate of election was issued by the state canvassing board to Thomas F. Konop on December 8, 1910, and filed with the secretary of state, whereupon the latter delivered to said Konop a certificate of his election and also forwarded a certificate to the House of Representatives at Washington as required by law, and further:

"That said Thomas F. Konop, to whom said certificate has been issued, is now in possession of the office to which he was so declared to be elected, and that his name now appears on the roll of the House of Representatives as a member-elect from the Ninth Congressional district of Wisconsin, of the Sixty-second Congress of the United States of America."

It also appeared in said return that the state canvassing board, after its canvass of said election and on December 8, 1910, adjourned without day.    The certificate delivered to

Konop and filed in the House of Representatives bears date December 9, 1910. All this occurred prior to the service of the alternative writ, and all this is admitted by demurrer to the return to that writ. So that even on the assumption that the board of county canvassers of Oconto county erroneously arrived at its determination from a consideration of the poll list together with the return from the election inspectors, and that the board of state canvassers accepted the return of the board of county canvassers of Oconto county so based, the writ must be denied under the authority of *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628, if that case is not to be overruled. Quoting from that case:

"We simply hold that, where a canvass has been made and a certificate issued, the certificate holder cannot be deprived of his *prima facie* right to the office by any subsequent action of the canvassing board. His right must be contested and set aside in a proper action or proceeding brought for the purpose, and until this has been done *mandamus* will lie to place him in possession of the property and privileges of the office to which he has *prima facie* title."

Again:

"This court has held that one who has been declared by the proper canvassing board to have been elected to an office, and has received the proper certificate of election and duly qualified, is entitled to the possession of the office and its property and emoluments as against all the world except a *de facto* officer already in possession under color of authority, and that this right persists until a different result is reached in a *quo warranto* action or other proper proceeding to contest the right of the certificate holder. *State ex rel. Jones v. Oates,* 86 Wis. 634, 57 N. W. 296; *State ex rel. McCoale v. Kersten,* 118 Wis. 287, 95 N. W. 120."

The constitution of the United States makes the House of Representatives "judge of the elections, returns, and qualifications of its own members." And this excludes any jurisdiction on the part of this court to entertain or determine any question relating to the election, return, or qualification of

members of Congress after the matter has reached the stage above indicated.    *O'Hara v. Powell,* 80 N. C. 103, and cases *infra.*

2. A motion to quash the alternative writ is also before the court.    It is contended that the *mandamus* in the instant case may be supported under sec. 3452, Stats. (1898), relating to *mandamus.*    That contains the following:

"In any proceedings by *mandamus* against any board of canvassers in the supreme court to compel the execution and delivery of a certificate of election to any person claiming to have been elected to the office of state senator or member of the assembly, or member of the house of representatives of the congress of the United States, or presidential elector, by the qualified electors of this state, the court may, if it is deemed necessary to promote the ends of justice, inquire into the facts of such election, irrespective of the election returns, and determine who was in fact entitled to the certificate of election to such office by the greater number of legal votes cast, and the certificate issued in pursuance of such determination shall be taken as the true and only lawful certificate of election to such office, and any other certificate of election to the same office issued by any board of canvassers shall be null and void."

This is clearly an election contest statute and cannot be made to do service in a political exigency as anything less than this.    This is apparent from the provision that it is only the certificate issued in pursuance of "such determination" that shall be taken as the true and only lawful certificate of election to such office.    What is "such determination?"    The only determination theretofore mentioned in this statute is as follows:

"The court may . . . inquire into the facts of such election, irrespective of the election returns, and determine who was in fact entitled to the certificate of election to such office by the greater number of legal votes cast."

There is nothing in this statute giving such efficacy to any certificate of election except that issued in pursuance of such

determination.   This statute is therefore unconstitutional as regards representatives in Congress under the clause of the federal constitution first quoted, and such is the consensus of judicial opinion everywhere with reference to statutes of this kind authorizing a contest and a trial of the election result on the merits in all cases where the constitution makes the legislative body the judge of the election, returns, and qualifications of its members.   *Att'y Gen. ex rel. Beers v. Board of Canvassers,* 155 Mich. 44, 118 N. W. 584; *Vance v. Board of Canvassers,* 95 Mich. 462, 54 N. W. 1048; *Pound v. Board of Canvassers,* 120 Mich. 181, 79 N. W. 114; *O'Hara v. Powell,* 80 N. C. 103; *In re Election of McNeill,* 111 Pa. St. 235; *Dalton v. State ex rel. Richardson,* 43 Ohio St. 652, 3 N. E. 685; *Ellison v. Barnes,* 23 Utah, 183, 63 Pac. 899.

*State ex rel. McDill v. Board of Canvassers,* 36 Wis. 498, also recognizes this.   Quoting from that case:

"We cannot determine the right to the office, but only the duty of the board of state canvassers in respect to the canvass.   The power to determine the right is, by the constitution of the United States, vested exclusively in the House of Representatives.   Art. I, sec. 5.   Hence we cannot go behind the returns and investigate and correct frauds and mistakes, and adjudge which of the candidates was elected, but can only determine whether the board of state canvassers ought to include in its canvass and statement of the votes cast for representative in Congress those returns from Wood county."

There was no certificate of election issued in the *McDill Case.*   Speaking of the board of canvassers the court said:

"They have, however, pending the present proceedings, voluntarily abstained from making the certificate required by law, of their determination of the result of such election, thus relieving the relator and the court from what might have caused embarrassment, and have gracefully submitted the whole matter to the adjudication of the court."

If it be said that under sec. 3452, Stats. (1898), this court could exercise a fraction of the power there attempted to be

conferred upon the court, the answer is that it is only to a certificate of election issued pursuant to a judgment of this court, after a contest on the merits, that this statute gives the effect of superseding a certificate of election theretofore issued. In this paragraph, speaking of the statute, I have used the word "unconstitutional." Perhaps in deference to the learned professors, journalists, and others who maintain that courts have usurped the power of declaring laws unconstitutional, I should have said that the provisions of the statute are inconsistent with those of the constitution, and I find it impossible to conform to both, hence follow the constitution as paramount.

3. The certificate of election having been issued and presented to the House of Representatives, the matter has passed into the control of that legislative body and any decision made by this court in this proceeding will have no binding force or efficacy. Neither Congress nor any one else is required to regard it or give it weight. The alleged duty of this court to make such proclamation or fulmination is therefore not a judicial duty. *Gordon v. U. S.* 117 U. S. 697. The decision of this court would be a vain and idle ceremony. *O'Hara v. Powell, supra; In re Election of McNeill, supra; Ellison v. Barnes, supra; Dalton v. State ex rel. Richardson, supra.* Nothing could be more insidiously damaging to the judicial department of government than a recognition of its power or duty to make proclamations to which no one is obliged to give heed or respect.

4. On the merits of the application there is no ground for the issue of the writ. It is uncontroverted that the board of state canvassers correctly canvassed the returns from all the counties constituting the Congressional district except Oconto county. Respecting this county it appears that the statement required to be made by the county canvassers and returned to the state canvassing board showed that Mr. Konop had received 1,450 votes in Oconto county; but the statute further

provided that the county canvassers "shall append to each such statement as part thereof a succinct tabular exhibit, in figures, of the votes cast at each election poll in the county for each office and person entering into the canvass embraced in such statement, whether canvassed or not, and if any votes were rejected shall specify the reasons therefor." Sec. 83, Stats. (1898).

This tabular statement showed that there were cast for relator in the first precinct of Pensaukee 56 votes and for his opponent, Konop, showed 16 votes, with the following annotation opposite the 16 votes: "22—Shown on the tally sheet. Inspectors' statement shows 16." The difference between 16 and 22 was then added at the foot of the column to 1,444, making 1,450. What the board of county canvassers of Oconto county had before it we do not know. Tally sheets are in some cases expressly authorized by statute. Ch. 459, Laws of 1901. In others by implication. Secs. 94$i$ and 94$j$, Stats. (1898); Election Laws of 1910, p. 91. Whether there was a voting machine in the precinct in question we do not know. The board of state canvassers had before it, then, a certified statement from the county board of canvassers showing that Mr. Konop received 1,450 votes, and the county canvassers had appended to this statement and as part thereof a tabular exhibit in figures of the votes cast at each election poll showing 16 votes for Konop, corrected by the annotation aforesaid of 22, which brought his total vote of Oconto up to 1,450, corresponding with the certified statement. The certified statement is in nowise impeached unless it be by this tabular exhibit and the correction aforesaid, and the tabular exhibit is in nowise impeached except as it may be impeached by the memorandum aforesaid, indorsed thereon, relating to the correction. There is no showing that Mr. Konop did not get these 22 votes in the first precinct of Pensaukee. But it is contended that the memorandum of correction indicates that the board of county canvassers made the correction from the

tally sheets returned to them by the inspectors and that these tally sheets are not official documents or required to be returned. They were, however, treated as competent to be considered for the purpose of correcting the return in *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628. Another statute (sec. 82, Stats. 1898) providing for the county canvass authorized the county canvassers, if the return from the election inspectors of the various precincts shall be found so informal or incomplete that the board of county canvassers cannot intelligently canvass them, to dispatch a messenger with such returns to the inspectors with a written specification of the informalities or defects, and command the inspectors to forthwith complete the same in the manner required by law and deliver them to such messenger.

We have no proof that the county canvassers did this or omitted it, but we have in the return a certified copy of the duplicate statement of the canvass by the inspectors required by sec. 78, Stats. (1898), to be delivered to the town clerk, and this shows 22 votes for Mr. Konop. What the duplicate original which was delivered to the county canvassers shows we are not informed, except as may be indicated by the memorandum on the tabular exhibit above quoted. This memorandum is an extra-official statement not required by law to be made, and is in my opinion entirely insufficient to impeach the canvass of the state board or overthrow the certificate of election already issued.

The following opinion was filed March 14, 1911:

WINSLOW, C. J. (*concurring*). I entirely agree that the writ in this case should be quashed upon two plain propositions which I understand to be the only propositions necessary to decide, or in fact decided, in the case.

1. The certified statement of the county board of canvassers states positively that Mr. Konop received 1,450 votes in

State ex rel. Kustermann v. Board of State Canvassers, 145 Wis. 294.

Oconto county. This statement is not overcome by the figures on the tabular statement attached. The utmost that can be said about the tabular statement is that it is somewhat confused: it does not contradict nor overcome the positive assertion in the certified statement. In order to justify the issuance of a writ of *mandamus* the right thereto must be certain, and this cannot be said here.

2. Owing to the fact that the term of office commences within a few days and the House of Representatives is the ultimate tribunal which must decide who was in fact elected, this court does not deem that the "ends of justice" would be promoted by undertaking a fruitless inquiry into the facts of the election independent of the returns. Such an inquiry would consume much time, and any judgment rendered by this court at the end would have no substantial effect.

I do not understand that the principles laid down in the *Rinder Case* have any application here, because no one is in possession of the office at the time this judgment is rendered, nor do I understand that the court decides or intimates that it cannot compel a canvassing board to reconvene after final adjournment and perform its duty if it appear that it has failed to do so.

Further, I do not understand that the court decides or intimates that it may not in a proper case exercise the powers attempted to be conferred by the last clauses of sec. 3452, Stats. (1898). These questions are delicate and important questions which will deserve serious consideration when it becomes necessary to decide them.

The following opinion was filed March 14, 1911:

MARSHALL, J. (*concurring*). While I concur in the decision and in the court's real reason therefor, as I understand it, I fear what has been written may cause uncertainty as to the court's position,—uncertainty growing out of method of

treatment in its opinion, intensified by the additional opinion by my Brother TIMLIN. So I will place on file my understanding of what the court has decided as to minor questions underlying the ultimate one as to whether the return to the alternative writ and the writ itself show, as matter of law, the relator not to be entitled to, or at least under the circumstances should not be awarded, the relief prayed for.

Obviously the motion to quash presented the question of sufficiency of facts stated as ground for the writ, but it should be understood that the admissions involved in the motion go only to facts well pleaded. A demurrer or motion in the nature thereof does not admit pleaded conclusions of law. In this respect the suggestion that Konop is actually in possession of the office of member of Congress because it is so alleged as a conclusion in the return, challenges attention. Starting with the false premise as a verity the idea naturally followed that he could not be ousted from office by a proceeding of this kind. One false premise naturally leads to a false syllogism in the whole and a wrong conclusion.

The falsity of the premise that Konop, when the return was made, was practically a member of Congress—an incumbent of the office—though the time for which he was elected had not commenced, he had not been sworn in, and the office was actually in the possession of him whose term had not expired, is too obvious to need more than mentioning. The facts are stated in the return in accordance with common knowledge of lawyers and laymen as well. It is alleged that Konop has been merely awarded the certificate of election by the canvassing board, and filed it with the proper officer at Washington. Following that it is said "his name now appears on the rolls of the House of Representatives of the Sixty-second Congress." That means, necessarily, the future Congress, since the Sixty-second Congress could not come into existence till expiration of the Sixty-first Congress. So the status of Konop when the return was made was that of a

mere claimant for an office, who had been awarded the usual evidence of *prima facie* right thereto.   The office itself was in possession of another, and the one holding such *prima facie* right and such other were claimants for the future term.   I understand that was the view of the court when the case was decided.

There being no question as to the facts, as the court, I venture to say, understood them, the first mootable question was whether its jurisdiction extends to coercing a canvassing board, whose members have gone through the form of doing their duty; but in fact have ignored the majority candidate, as shown by mere mathematical work of determining the fact from the face of the returns, awarded the certificate to a person shown thereby to be in the minority and adjourned,—to reconvene and perform their full duty.

I cannot think the court doubts its jurisdiction in a case like this though there is no declaration of it in the opinion. The general scope of its power has been stated over and over again.   The third broad grant in sec. 3, art. VII, of the constitution in these words, "It shall have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari* and other original and remedial writs, and to hear and determine the same," is almost unmeasurable in extent.   It was early held that such clause was not used to furnish instrumentalities for executing preceding granted powers; that, as to the latter, authority to use all appropriate and usual instrumentalities was given as incident thereto, and that the third clause creating the boundless, so to speak, authority as to writs, was given for an independent field of jurisdiction,— "Original jurisdiction of certain proceedings at law and in equity to protect the general interests and welfare of the state and its people,"—as said in *Att'y Gen. v. Blossom,* 1 Wis. 317, quoted and approved in *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 79 N. W. 1081; *State ex rel. Fourth Nat. Bank v.*

*Johnson,* 105 Wis. 164, 83 N. W. 320; *In re Court of Honor,* 109 Wis. 625, 85 N. W. 497; *State ex rel. Cook v. Houser,* 122 Wis. 534, 100 N. W. 564; *State ex rel. Umbreit v. Helms,* 136 Wis. 432, 118 N. W. 158. It is a great power lodged in this court for its use on great occasions as they may arise requiring it, the sole judge as to the occasion and of the manner of meeting it being the court itself. No power but the people acting fundamentally can change that. The trust being of a high prerogative character, it was not intended that it should be used except upon prerogative occasions,—dire need for it, as has often been said, but when such need exists and when it does not is within the sound judgment of the court.

These expressions are found characterizing the power under discussion, commencing with *Att'y Gen. v. Blossom, supra:*

"It extends to all judicial questions affecting the sovereignty of the state, its franchises, or prerogatives, or the liberties of the people. *Quod ad statum reipublicæ pertinet."*

"Original jurisdiction of certain writs because they are designed for the very purpose of protecting the sovereignty and its ordained officers from invasion or intrusion, and also to nerve its arm to protect its citizens in their liberties, and to guard its prerogatives and franchises against invasion."

"Original jurisdiction of certain proceedings at law and in equity, to protect the general interests and welfare of the state and its people, which it would not do to dissipate and scatter among many inferior courts."

"A court of first resort on all judicial questions affecting the sovereignty of the state, its franchises or the prerogatives or liberties of its people."

As thus defined the original authority of this court is written in the constitution as effectually as words could do it. I reiterate, it is as broad in its sphere of activity as possibilities affecting the interests which might appropriately require use of a power of its high prerogative character. It is not meas-

urable by any legislative notion or restrictable thereby, or circumscribed by the ancient character of the common-law writs mentioned. The writs are usable according to such character or expansible and adaptable to meet, as we have seen, all the possibilities within the scope of the sovereign power itself, as the court has construed the constitutional grant. *State ex rel. Umbreit v. Helms, supra.*

It has always been used sparingly. With continued appreciation of its purpose it always will be used sparingly. But with proper conception *here* of the great trust reposed *here* and the possible necessity for its activity upon application made *here* to defend, perhaps the very citadel of the people's liberty, its existence will never be denied or the great scope of it cast into doubt. I aim to make this declaration as forceful as I can and, so far as I may aid under the circumstances, there will be no doubt about the court's position as I understand it. It was along this line the court entrenched its jurisdiction in the cases cited, meeting all difficulties of defining it, thus broadly, and rightly declaring in answer to appeals to restrict it by construction because of its supposed infirmities:—"if we should find it impossible to interpret the organic law of the court, we might not unjustly be held to confess our unfitness for this place."

I write as I have written for I deem it unfortunate for the court to say: "We do not regard it necessary to consider or decide whether *mandamus* will lie in any case after the board of state canvassers has determined the result, issued the certificate of election, and adjourned *sine die,* to compel the issuance of a certificate to another candidate under existing laws." At the very beginning, the court of necessity had to decide that very question before going further. A decision and opinion covering other points, without first meeting such question, would be, to use the language of my Brother TIMLIN, "a mere fulmination." That the case was decided largely upon the merits and many points were treated lying

beyond the initial one, shows conclusively that it was the judgment of the court that it had jurisdiction. Therefore the concession must be regarded as pregnant with judicial assertion.

Following the foregoing it would seem needless to cite any of the number of instances where original jurisdiction of this court has been exercised in circumstances similar to those here, if assertion of jurisdiction were not left by the court to implication and denied independently. In *State ex rel. McDill v. Board of State Canvassers,* 36 Wis. 498, such a case as this, except the certificate had not been issued, jurisdiction was taken, and regarded as undoubted, to consider and decide all questions of fact and law presented. No doubt of power was entertained. That seems certain. The embarrassment suggested contingent upon the certificate having been issued and the board of canvassers adjourned, had reference not to power, but whether in such circumstances power ought to be exercised. No thought was entertained that authority was dependable upon anything but the constitution itself, or but what such authority was ample. The thought that, possibly, the court could not give effective relief in case of the board having issued the certificate to one not entitled thereto upon the face of the returns, and adjourned would not, I venture to say, have been entertained in the light of adjudications on the subject we now have the benefit of.

In *State ex rel. Hadfield v. Grace,* 83 Wis. 295, 53 N. W. 444, the board of canvassers awarded the decision by disobeying the law in reaching the result. One mooted question was whether the board could, under such circumstances, be compelled to reconvene, perform its full duty, and make the proper award. It was decided in the affirmative, cases in several other jurisdictions to the same effect being cited.

There was no room here to doubt the jurisdiction or propriety of exercising it because of *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628. The idea that the applica-

tion for relief here in effect called for overruling the decision there shows a misconception of what was before decided, and of that I can safely appeal to the record. There the court took jurisdiction to decide as to the duty of the respondent. It held there was power in such a case because the wrong complained of affected "the sovereignty of the state, its franchises or prerogatives, or liberties of the people," but, aside from some special question involved having state-wide effect, the jurisdiction was not affordable in respect to a mere local office. Relief was however denied upon the ground that the primary election law created a new office, that of candidate for office—that is, that it gave to the person receiving the greatest number of party votes at the primary for a particular office, the right to be the sole party candidate for such office at the succeeding election; that upon, in due course, his receiving the certificate of nomination he acquired full official status; because an incumbent of the office of party candidate for the particular place in question, and, therefore, *mandamus* to coerce the ministerial officers, having only to do with awarding, in due course, the *prima facie* right to the office, after their having done so, and thus created an incumbency— is improper, because then there is a plain remedy at law by *quo warranto,*—the ordinary legal remedy,—to try the title to the office. The familiar rule was adhered to that resort can only be had to an extraordinary remedy when the common one will not do. *Ubi cessat remedium ordinarium ibi decurritur ad extraordinarium.*

True, this language was used in *State ex rel. Rinder v. Goff, supra:* "This court has held the one who has been declared by the proper canvassing board to have been elected to an office and has received the proper certificate of election and duly qualified, is entitled to the possession of the office," adding, "till otherwise determined in *quo warranto* proceedings." That, as will be seen by reference to authorities relied on, had reference to the doctrine that, after the term of office has in

fact commenced, and the person awarded the certificate has qualified and taken possession, or is competent to take possession, his right is not triable in this kind of a proceeding.

The court referred to *State ex rel. Jones v. Oates,* 86 Wis. 634, 57 N. W. 296, which was not an action of this sort though therein we find the idea significant that after the person holding the *prima facie* evidence of the right has qualified and taken possession he cannot be *mandamused* out of office by a rival who claims to have been the one really elected. A case more nearly in point is *State ex rel. Mercer v. Sullivan,* 83 Wis. 416, 53 N. W. 677. There the rule is definitely stated thus:

"Where a person declared by the inspectors of an election to have been duly elected to an office has qualified and entered upon its duties, *mandamus* will not lie to compel the inspectors to declare another person elected. The title to the office should be tried on *quo warranto.*"

The reason therefor was stated to be that "as soon as the status is such that *quo warranto* will lie, *mandamus* never lies where the former is adequate." It is needless to remark that *quo warranto* will not lie against a person who merely holds a certificate of election, as in this case. The logic of *State ex rel. Mercer v. Sullivan* follows,—*mandamus* will lie.

The foregoing I venture to say is supported by the textbooks and all well considered adjudications under systems like ours. This from sec. 182 of Merrill on Mandamus, supported by authorities, many of which are cited in *State ex rel. Hadfield v. Grace, supra,* is a good type of text-book phrasings of the law:

"The fact that a canvassing board has already declared the result and issued a certificate of election to another person is no adequate return to an alternative writ of *mandamus* to canvass the returns properly and to declare the proper result, when returns have been improperly counted or improperly rejected. Such action does not oust the incumbent, and is

often necessary to put the relator in a position to contest his rights."

In the cases cited a clear distinction is drawn, as indicated in the text, between compelling the board to reconvene after the one holding the certificate has actually taken office or qualified °and the term commenced, and before, while there exists only the mere evidence of right to the office.

In *Rosenthal v. State Board of Canvassers,* 50 Kan. 129, 32 Pac. 129, the question was raised as in this case. The office was membership in Congress. The canvassing board was held *functus officio* because it had done all it had a right to do; that whether the one it awarded the certificate was the person legally elected or not was another matter to be settled by Congressional action; that if the board had failed to award the certificate to the one entitled thereto upon the face of the returns and adjourned, the members could have been compelled to reconvene and perform their full duty. This language was used: "If a canvass has been wrongfully or improperly made and the board has adjourned *sine die,* this court may compel it to reassemble and make a correct canvass of all the returns before it at the time of the first canvass." Of course that was said, contemplating the limitation that the one holding the spurious certificate had not yet become an actual incumbent of the office.

Authorities in great number could be added to the foregoing. Indeed I venture to say there is no conflict, when the exact situation here with reference thereto is appreciated. I must say in concluding on this, my understanding is that the court is not really out of harmony with what I have said.

The idea may find lodgment with some from reading the court's opinion that it cannot deal with such a case as this because the legislative body is the judge of the qualifications of its members. That will be found expressly rejected in *People ex rel. Sherwood v. State Board of Canvassers,* 129 N. Y. 360, 29 N. E. 345, and many cases which might be re-

ferred to. It is pointed out that such an action does not involve a contest but whether certain ministerial officers have done their duty in awarding the *prima facie* right indicated by the face of the returns. *Att'y Gen. ex rel. Beers v. Board of Canvassers,* 155 Mich. 44, 118 N. W. 584, is in harmony therewith. There an attempt was made to compel the board to determine, not who received the most votes, as here, by the face of the returns, but whether the majority candidate for state senator was eligible to the office,—a question lodged by the constitution in the senate. The same is true of *In re Election of McNeill,* 111 Pa. St. 235, and other cases involving election contests.

Of course, in such cases each legislative body is the judge. It would be the plainest of usurpation to attempt to invade its jurisdiction. But the determination of the actual right to a legislative office is one thing and that of who, at the hands of the canvassing board, is entitled to its evidence of right, is quite another thing. Jurisdiction as to the former is in the legislative body. In the latter it is in the canvassing board and that can be compelled by judicial proceedings to exercise jurisdiction properly. Unless one keeps the distinctions in mind between trial of the right to an office, and trial of whether a canvassing board has properly performed its duty in determining from the face of the returns who is entitled to the certificate of election, he will be liable to fall into confusion and error.

I think the court in discussing this case must have appreciated the last foregoing or would not have inquired, as it did, into whether the state board awarded the certificate according to the face of the returns. The board had no other authority. Until it correctly exercised that it could not make itself *functus officio* by adjourning. If it was not *functus officio* because of having failed to do its duty, it remained— till some other remedy intervened,—as one would upon the person holding a wrongfully issued certificate becoming an

incumbent of the office,—subject to coercion by this court to exercise its jurisdiction, the case itself being important enough according to the judicial policy established, to warrant it in opening its doors.

That part of the court's opinion suggesting that the board had done its duty merely because of having gone through the form thereof, and so cannot be coerced, is misleading. It will be found by the authorities cited that such a board, as we have said, cannot be rightly claimed to have done its duty and so extinguished its authority, till it shall have properly performed that duty. The cases where the expression is used, the board having done its duty it is *functus officio* and cannot be *mandamused,* are all where there was performance of duty in fact—a determination according to correct mathematical work, and it was sought to coerce the board to go further and exercise a jurisdiction not possessed by it—determine the real right to the office.

I will add that I do not think sec. 3452, Stats. (1898), has anything to do as regards whether the state board did its duty or not. Whatever power the court has in that matter it takes from the constitution, not from such section. So far as that might be considered a practice regulation, this court would follow it, doubtless, when reasonably practicable. So far as it attempts to confer power, it does not add, I think, to the grant contained in the constitution. So far as, in attempting to regulate, it limits or prejudicially hampers the power, of course, it is inefficient. I agree with the suggestion on this in the last part of the court's opinion.

I also agree that, on the facts, it is very difficult to say whether the state board read the face of the returns in the right aspect; that the right to the office will be presentable to the legislative body without delay which, if challenged in respect to the matter, must decide it, and will do so regardless of evidence afforded by any certificate furnished by the board of canvassers, except so far as that will be given *prima facie*

effect; and, further, that whether to allow use of the court's jurisdiction or not, and especially by a *mandamus* proceeding, is discretionary; so the proceeding ought to be dismissed. It is only where the right is clear and there has been a clear omission of duty in the premises and the substantial interests of the state and the parties would be otherwise seriously prejudiced, that the remedy should be allowed and there is a real right to it.